UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronald Eric MARSHALL,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Thomas Anthony Tripline, Jr.,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Wilhelmina Anderson, Defendant–
Appellant.

United States of America,
Plaintiff–Appellee,

v.

John David Anderson, Jr.,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Rachelle Lanett Anderson,
Defendant–Appellant.

Nos. 01–4488, 01–4490, 01–4688,
01–4689, 01–4694.

United States Court of Appeals,
Fourth Circuit.

Argued: May 9, 2003.

Decided: June 13, 2003.

**ARGUED:** Jonathan Alan Gladstone, Annapolis, Maryland; Neil Ian Jacobs, Rockville, Maryland, for Appellants. Martin Joseph Clarke, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Arcangelo M. Tuminelli, Baltimore, Maryland, for Appellant Marshall; Joseph J. Gigliotti, Crofton, Maryland, for Appellant Tripline; Keith E. Golden, GOLDEN & MEIZLISH, Columbus, Ohio, for Appellant Wilhelmina Anderson. Thomas M. DiBiagio, United States Attorney, Robert R. Harding, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

Before NIEMEYER and MOTZ, Circuit Judges, and GOODWIN, United States District Judge for the Southern District of West Virginia, sitting by designation.

Affirmed in part and remanded in part, with instructions, by published opinion. Judge DIANA GRIBBON MOTZ wrote the opinion, in which Judge NIEMEYER and Judge GOODWIN joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

A jury found Ronald Eric Marshall, Thomas Anthony Tripline, Jr., Wilhelmina Anderson, John D. Anderson, and Rachelle Lanett Anderson (collectively "Defendants") guilty of conspiracy to sell and offer for sale drug paraphernalia and conspiracy to aid and abet the distribution and possession with intent to distribute controlled substances. Ronald Marshall and John Anderson were also convicted of related charges, including conspiracy to import drug paraphernalia and participation in a continuing criminal enterprise ("CCE"). With respect to Ronald Marshall and John Anderson, we remand with instructions to vacate their conspiracy convictions because those convictions constitute predicate offenses for their CCE convictions. In all other respects, we affirm.

### I.

From 1993 to 2000, Defendants played various roles in operating several stores in Baltimore, Maryland. Along with some ordinary convenience store goods, these stores sold chemical diluents, gelatin capsules, glass vials, and similar items which customers purchased and used to process and package controlled substances.

On January 27, 2000, a federal grand jury indicted Defendants and nine other co-defendants in a multi-count indictment. After a trial that exceeded twenty trial days, the jury convicted all Defendants on Count One of the indictment, which charged conspiracy to: (1) knowingly sell and offer for sale drug paraphernalia, in violation of the drug paraphernalia statute, see 21 U.S.C.A. § 863(a)(1) (West 1999); and (2) knowingly aid and abet the distribution and possession with intent to distribute a controlled substance, in violation

of conspiracy and drug laws, *see* 18 U.S.C.A. § 2 (West 2000); 21 U.S.C.A. §§ 841(a)(1), 846 (West 1999). Ronald Marshall and John Anderson were also convicted of: (1) conspiracy to import drug paraphernalia, to wit, mannitol, in violation of 21 U.S.C.A. §§ 863(a)(3), 846; (2) multiple counts of importing drug paraphernalia, to wit, mannitol, in violation of 21 U.S.C.A. § 863(a)(3); (3) engaging in a CCE, in violation of the CCE statute, *see* 21 U.S.C.A. § 848(a) (West 1999); (4) multiple counts of selling drug paraphernalia, to wit, mannitol, in violation of 21 U.S.C.A. § 863(a)(1); and (5) conspiracy to transport, transmit and transfer and attempt to transport, transmit, and transfer a monetary instrument with the intent to promote unlawful activity, in violation of the money laundering statute, *see* 18 U.S.C.A. § 1956(a)(2)(A) (West 2000).[1]

The Government's evidence at trial consisted of testimony by six of Defendants' indicted co-defendants, four expert witnesses, and an FBI agent who had posed as a wholesale broker of drug paraphernalia for approximately one year. The Government also introduced physical evidence seized from drug dealers who were followed back to "cut houses" after they had purchased products at Defendants' stores. Taken in the best light for the Government, this evidence established that, over a period of several years, Defendants and others sold thousands of dollars of drug paraphernalia from retail stores in Baltimore, Maryland.

The district court sentenced Ronald Marshall and John Anderson to 240 months for engaging in a CCE, and imposed lesser, concurrent sentences for their other convictions. The court sentenced Thomas Tripline to 151 months for

conspiracy to aid and abet distribution of controlled substances and 27 months for conspiracy to sell drug paraphernalia, with the sentences to be served concurrently. Wilhelmina and Rachelle Anderson were each sentenced to 120 months for conspiracy to aid and abet distribution of controlled substances and 24 months for conspiracy to sell drug paraphernalia, with the sentences to be served concurrently.

On appeal, Defendants challenge their convictions and sentences on numerous grounds. Only four of these merit discussion.

## II.

Defendants' most significant contention centers on the fact that they were convicted of selling and importing not illegal controlled substances, but rather mannitol, a chemical diluent that can be used to "cut" heroin. Defendants make three arguments relating to this issue. First, they argue that the district court erred in refusing to instruct the jury that mannitol is not "drug paraphernalia" within the meaning of 21 U.S.C.A. § 863. Second, they maintain that an interpretation of § 863 that would permit the inclusion of mannitol and other diluents in the definition of drug paraphernalia would render the statute void for vagueness. Third, Defendants contend that the district court abused its discretion in not instructing the jury as to the specific statutory examples of items "primarily intended or designed for use in ... ingesting, inhaling, or otherwise introducing" a controlled substance. *See id.* We consider each of these arguments in turn.

---

1. John Anderson was also indicted on two additional counts for which the jury acquitted    him.

## A.

■ Title 21, Section 863(a) of the United States Code makes it unlawful for any person, "(1) to sell or offer for sale drug paraphernalia; ... or (3) to import or export drug paraphernalia." The statute defines "drug paraphernalia" as:

any equipment, product, or material of any kind which is *primarily intended or designed for use* in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance, possession of which is unlawful under this subchapter. It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, methamphetamine, or amphetamines into the human body, such as—

(1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(2) water pipes;

(3) carburetion tubes and devices;

(4) smoking and carburetion masks;

(5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

(7) chamber pipes;

(8) carburetor pipes;

(9) electric pipes;

(10) air-driven pipes;

(11) chillums;

(12) bongs;

(13) ice pipes or chillers;

(14) wired cigarette papers; or

(15) cocaine freebase kits.

21 U.S.C.A. § 863(d) (emphasis added).

Section 863(e) further provides that,

In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:

(1) instructions, oral or written, provided with the item concerning its use;

(2) descriptive materials accompanying the item which explain or depict its use;

(3) national and local advertising concerning its use;

(4) the manner in which the item is displayed for sale;

(5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;

(7) the existence and scope of legitimate uses of the item in the community; and

(8) expert testimony concerning its use.

21 U.S.C.A. § 863(e). Finally, § 863(f)(2) exempts, *inter alia*, "any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and traditionally intended for use with tobacco products, including any pipe, paper, or accessory."

Defendants concede that "[t]he general definitional section [of § 863] contains a list of gerunds which supports the conclusion that diluents are covered by the act." Brief of Appellants at 19. They maintain, however, that the Government failed to

show that the mannitol they imported and sold was "primarily intended ... for use" in connection with unlawful controlled substances, as required by § 863(d).

The Supreme Court has held that the phrase "primarily intended ... for use" in the statutory predecessor of § 863(d) states an objective standard referring "generally to an item's likely use." *Posters 'N' Things, Ltd. v. United States,* 511 U.S. 513, 521, 114 S.Ct. 1747, 128 L.Ed.2d 539 (1994).[2] The Court noted that the "objective" nature of the definition of "primarily intended" reached "beyond the category of items that are likely to be used with drugs by virtue of their objective features," *id.* at 521 n. 11, 114 S.Ct. 1747, and included, under certain circumstances, mixed-use items. Mannitol, of course, is such a mixed-use item. "Thus, while scales or razor blades as a general class may not be designed specifically for use with drugs, a subset of those items in a particular store may be 'primarily intended' for use with drugs by virtue of the circumstances of their display and sale." *Id.*

The evidence in this case clearly demonstrates that the mannitol sold by the Defendants was " 'primarily intended' for use with drugs by virtue of the circumstances of [its] display and sale." *Id.* The Government offered evidence that Defendants chose the location of their stores based on proximity to drug "strips;" gave discounts on diluents purchased in the proportions necessary for diluting, or "cutting," pure heroin down to a form that can be safely used; and selected inventory based on the needs of drug dealers and users.

Further, the Government produced evidence that Defendants sold chemical dilu-

ents used for cutting drugs in separate stores from drug packaging products to avoid police scrutiny; gave customers eye droppers to "fake out" police; and kept items like mannitol and glass vials hidden under counters or in back rooms, rather than displaying them openly with legitimate goods, like clothes or potato chips. The proceeds realized from the sale of items with only legitimate uses were negligible in comparison to the proceeds from the sale of chemical diluents, vials, or other items with drug-related uses. Numerous witnesses testified that Defendants knew that their primary customers were drug dealers, and store employees openly discussed the use of their products in connection with cutting drugs.

The Government also established through expert testimony that mannitol was one of the most common diluents used to cut heroin; that many of the other chemicals sold by Defendants are also common diluents used to cut controlled substances; and that many of the other items in the Defendants' stores—*e.g.* scales, grinding kits, strainers, latex gloves, razors, and breathing masks—were also commonly used to cut drugs. Experts also testified that there was no legitimate pharmacological or food-related use for mannitol in the form imported and sold by Defendants, and an FBI agent testified that he had only come across mannitol in the context of drug trafficking.

Thus, in light of the factors courts may consider to determine whether an item constitutes drug paraphernalia, *see* 21 U.S.C.A. § 863(e), and the *circumstances* of this case, it is clear that the district court did not err in rejecting Defendants'

---

**2.** Congress repealed the drug paraphernalia statute at issue in *Posters,* 21 U.S.C. § 857, and replaced it with 21 U.S.C. § 863. *See* Crime Control Act of 1990, Pub.L. 101–647, § 2401, 104 Stat. 4858. In all respects relevant to this case, the two statutes are identical. *See Posters,* 511 U.S. at 516 n. 5, 114 S.Ct. 1747.

request to instruct the jury that mannitol did not constitute "drug paraphernalia."[3]

## B.

■ Defendants' second argument, that § 863 is void for vagueness if mannitol can properly be considered "drug paraphernalia," also falls short. In *Posters*, the Supreme Court addressed a similar argument and concluded that the statutory predecessor of § 863 did not fail because of vagueness. *Posters*, 511 U.S. at 525–6, 114 S.Ct. 1747. Although the Court recognized that "application [of a statutory prohibition] to multiple-use items—such as scales, razor blades, and mirrors—may raise more serious concerns" than application of the prohibition to items that have no use unconnected with drugs, it concluded that the statute was not unconstitutionally vague as applied in that case because "[p]etitioners operated a full-scale 'head shop,' a business devoted substantially to the sale of products that clearly constituted drug paraphernalia." *Id.* at 526, 114 S.Ct. 1747.

Defendants seek to distinguish *Posters* on the ground that while both cases involved the sale of mannitol, the defendants in *Posters* also sold items explicitly listed in the "drug paraphernalia" statute. *See Posters*, 511 U.S. at 515, 114 S.Ct. 1747 (noting seizure of bongs and roach clips in addition to mannitol). However, the mere fact that Defendants did not also sell items explicitly delineated in the statute as drug paraphernalia does not detract from the overwhelming evidence that they, like the defendants in *Posters*, operated "a business devoted substantially to the sale of products that clearly constituted drug par-

aphernalia." *Id.* at 526, 114 S.Ct. 1747. Accordingly, the logic of *Posters* applies here, mandating a holding that § 863, like its statutory predecessor, is not unconstitutionally vague as applied to egregious facts such as those present in this case.

## C.

■ Finally, Defendants assert that the district court abused its discretion in refusing to include in its instructions to the jury the list of examples included in the statutory definition of "drug paraphernalia," like water pipes and carburetion tubes. *See* 21 U.S.C.A. §§ 863(d)(1)-(15); *United States v. Helem*, 186 F.3d 449, 454 (4th Cir.1999) (noting that decision to give jury instruction is reviewed for abuse of discretion).

As is clear from the statute, the list Defendants contend the district court should have read to the jury is simply illustrative, and illustrative only of examples of the general category, "items primarily intended or designed for use in *ingesting, inhaling,* or otherwise *introducing*," illegal drugs. 21 U.S.C.A. § 863(d) (emphasis added). The statutory definition of "drug paraphernalia" also specifically includes the general category, "items primarily intended or designed for use in *manufacturing, compounding, converting, concealing, producing, processing, preparing,* [or] *injecting*," illegal drugs. *Id.* (emphasis added). In this case, mannitol more closely fits the kind of "drug paraphernalia" that is "primarily intended ... for use in ... producing, processing, [or] preparing," heroin, than an "item primarily intended or designed for use in ingesting, inhaling, or otherwise introducing" heroin. *See id.*

---

**3.** Because we find the statute unambiguous on its face, we need not address Defendants' argument with respect to § 863's legislative history. *See Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 653 (4th Cir.1996) ("If the statu-

tory language is clear and unambiguous, our inquiry ends there as well; we neither resort to an examination of the statute's legislative history nor apply the traditional rules of statutory construction." (citations omitted)).

For this reason, an instruction to the jury that included examples of items "primarily intended or designed for use in ingesting, inhaling, or otherwise introducing" controlled substances, might well have been more confusing than helpful. Certainly, the district court did not abuse its discretion in refusing to give the requested instruction.

## III.

■ Defendants also argue that because the United States Customs Service approved their application to import mannitol, the doctrine of entrapment-by-estoppel prohibits their prosecution for importation and sale of mannitol.

■ "A criminal defendant may assert an entrapment-by-estoppel defense when the government affirmatively assures him that certain conduct is lawful, the defendant thereafter engages in the conduct in reasonable reliance on those assurances, and a criminal prosecution based upon the conduct ensues." *United States v. Aquino–Chacon,* 109 F.3d 936, 938–9 (4th Cir.1997) (citing *Raley v. Ohio,* 360 U.S. 423, 438–9, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959)). To assert the defense, a defendant "must demonstrate that there was 'active misleading' in the sense that the government actually told him that the proscribed conduct was permissible." *Id.* at 939 (citations omitted).

Defendants rest their entrapment-by-estoppel argument on the fact that Ronald Marshall filed a form with the United States Customs Service disclosing his intention to import mannitol. Defendants contend that by failing to prohibit the importation of mannitol, the Customs Service thereby gave tacit assurances that Ronald Marshall's conduct was legal.

This argument has no merit. The Customs Service's failure to notify Defendants

that the importation of mannitol is illegal if the mannitol is used as drug paraphernalia simply does not amount to "active misleading," as required for an entrapment-by-estoppel defense. *See Aquino–Chacon,* 109 F.3d at 939.

## IV.

■ In addition, Defendants contend that Count One of the indictment is duplicitous because it includes allegations of two crimes in a single count. Count One of the indictment charges that Defendants did

> knowingly, intentionally, and unlawfully combine, conspire, confederate and agree with each other . . . to knowingly, intentionally, and unlawfully commit offenses against the United States, to wit: (1) knowingly to sell and offer for sale drug paraphernalia in violation of [21 U.S.C. § 863(a)(1) ] and (2) knowingly to aid and abet the distribution and the possession with intent to distribute [controlled substances].

The Supreme Court has expressly rejected the contention that such a count, containing allegations of a single conspiracy to commit two or more separate crimes, is duplicitous. The Court reasoned, "[t]he allegation in a single count of conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime, and that is one, however diverse its objects." *Braverman v. United States,* 317 U.S. 49, 54, 63 S.Ct. 99, 87 L.Ed. 23 (1942) (internal quotation marks and citation omitted).

■ Furthermore, multiple sentences may be imposed for a single conspiracy if the conspiracy violated two separate statutory offenses and each provision satisfies the *Blockburger* test of requiring proof of a fact that the other does not. *Albernaz v. United States,* 450 U.S. 333, 338–40, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (citing

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

▉ In this case, the two statutory provisions in Count One clearly satisfy the *Blockburger* test and Defendants do not seriously contend otherwise. On one hand, a defendant can sell drug paraphernalia without aiding and abetting the distribution and possession with intent to distribute illegal drugs; on the other hand, a defendant can distribute and possess with intent to distribute illegal drugs without selling, mailing, importing, or exporting drug paraphernalia.[4] Therefore the district court did not err in sentencing Defendants for both conspiracy to sell and import drug paraphernalia and conspiracy to aid and abet the distribution and possession with intent to distribute illegal drugs.

## V.

▉ Finally, Ronald Marshall and John Anderson contend, and the Government agrees, that the district court erred in allowing both their conspiracy and CCE convictions to stand and for sentencing them for both crimes. We too agree. "A defendant convicted under 21 U.S.C. § 848(CCE) cannot, in addition, be convicted for any predicate conspiracy charges proved as elements of the § 848 offense." *See United States v. Wilson*, 135 F.3d 291, 303 (4th Cir.1998) (citing *Rutledge v. United States*, 517 U.S. 292, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996)). Accordingly, we must remand to the district court with instructions to vacate Ronald Marshall's and John Anderson's conspiracy convictions. *See id.* at 303–4, 116 S.Ct. 1241.[5]

## VI.

In sum, we remand to the district court to vacate the conspiracy convictions of Ronald Eric Marshall and John D.

---

4. The fact that Defendants' convictions for aiding and abetting in this case were based on the same conduct as Defendants' convictions for selling drug paraphernalia does not violate the Double Jeopardy Clause. *See United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (rejecting "same-conduct" rule and overruling *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)); *United States v. Hatchett*, 245 F.3d 625, 630–42 (7th Cir.2001) (concluding that two offenses were distinct even though under circumstances of particular case, proof of one offense required proof of same conduct required to prove second offense).

5. The remaining issues raised by Defendants require only cursory attention. The district court did not abuse its discretion in admitting videotaped footage under a "silent witness" theory, *see* 2 John W. Strong et al., *McCormick on Evidence* § 214 (5th ed.1999), because the Government introduced sufficient evidence establishing the reliability of the footage. Nor did the court abuse its discretion in refusing to admit into evidence the statement of facts from a witness's plea agreement when the probative value of the proffered evidence was minimal. *See United States v. Young*, 248 F.3d 260, 268–9 (4th Cir.2001). Additionally, none of Defendants' sentences violated the Supreme Court's holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because none of Defendants were sentenced above the statutory maximum for the crimes for which they were indicted and convicted. Moreover, the district court did not err in failing to require a special verdict on all elements of the CCE count. *See United States v. Console*, 13 F.3d 641, 663 (3d Cir.1993) ("[A] defendant has no right to a verdict on the elements of an offense." (citation omitted)); *United States v. Ellis*, 168 F.3d 558, 562 (1st Cir.1999) (holding special verdicts are not required in criminal cases). Finally, we have carefully reviewed the record and conclude that the Government produced sufficient evidence for a reasonable jury to conclude beyond a reasonable doubt that Tripline was a member of the charged conspiracy and that sufficient evidence supported (1) the district court's calculation as to attributable drug quantities, and (2) its factual findings as to the aggravated roles of some of Defendants.

Anderson; we affirm their remaining convictions. We also affirm the convictions of Wilhelmina Anderson, Rachelle Anderson, and Thomas Anthony Tripline.

*AFFIRMED IN PART AND REMANDED IN PART WITH INSTRUCTIONS*