**Ronald E. MARSHALL, Petitioner**

v.

**UNITED STATES of America, Respondent.**

Criminal No. L–00–033.
Civil No. L–04–465.

United States District Court,
D. Maryland.

Nov. 9, 2006.

Ronald E. Marshall, Fort Dix, NJ, Pro se.

## MEMORANDUM

LEGG, Chief Judge.

Pending is *pro se* petitioner Ronald E. Marshall's ("Marshall") motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Because the facts and legal arguments are adequately set forth in the existing record, an evidentiary hearing is not necessary.[1] For the reasons set forth below, the Court will, by separate Order, DENY Marshall's motion and DIRECT the Clerk to CLOSE the case.[2]

### I. Background

On January 27, 2000, a federal grand jury indicted Marshall and thirteen co-defendants for conspiracy to sell and offer for sale drug paraphernalia and conspiracy to aid and abet the distribution and possession with intent to distribute controlled substances. Marshall and two codefendants were also charged with conspiracy to import drug paraphernalia, importing and

---

1. *See United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir.1988) (recognizing that "[a] hearing is not required ... on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

2. The Court will DENY AS MOOT Marshall's Motion for Judgment (Docket No. 530) asking the Court to rule on his petition.

selling drug paraphernalia, and engaging in a continuing criminal enterprise ("CCE").

In the fall of 2000, Marshall and four of his co-defendants were tried over a 28–day period. The evidence at trial, which was overwhelming, showed that from 1993 to 2000, the defendants operated several stores in Baltimore, from which they sold chemical dilutents (including mannitol), gelatin capsules, glass vials, and other items that customers purchased and used to process and package controlled substances.[3]

The jury convicted each defendant of conspiracy to (i) sell and offer for sale drug paraphernalia, in violation of 21 U.S.C. § 863(a)(1), and (ii) aid and abet the distribution and possession with intent to distribute heroin, cocaine hydrochloride, and cocaine base, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). In addition, the jury convicted Marshall of (i) conspiracy to knowingly import drug paraphernalia in violation of 21 U.S.C. § 863(a)(3), (ii) knowingly importing drug paraphernalia in violation of 21 U.S.C. § 863(a)(3), (iii) engaging in a CCE in violation of 21 U.S.C. § 848(a), (iv) knowingly selling drug paraphernalia in violation of 21 U.S.C. § 863(a)(1), and (v) conspiracy to commit money laundering in

violation of 18 U.S.C. § 1956(h). On June 11, 2001, the Court sentenced Marshall to 240 months for engaging in a CCE and imposed lesser, concurrent sentences for his other convictions.

Marshall and several co-defendants appealed their convictions to the United States Court of Appeals for the Fourth Circuit. In an opinion dated June 13, 2003, the Fourth Circuit affirmed the defendants' convictions, with the exception of the conspiracy convictions of Marshall and one of his co-defendants, John Anderson. The Fourth Circuit ruled that Marshall and Anderson could not be convicted of both (i) a CCE offense, and (ii) the conspiracy counts that constituted the predicate offenses for the CCE conviction. Accordingly, the Fourth Circuit remanded with instructions for the Court to vacate the conspiracy convictions. *See United States v. Marshall,* 332 F.3d 254, 263–64 (4th Cir.2003). On remand, this Court vacated the conspiracy counts, but kept the original sentences for the remaining counts.

Arcangelo Tuminelli, Esquire, represented Marshall at his trial and sentencing and on appeal. In his § 2255 Motion to Vacate,[4] Marshall claims that Mr. Tuminelli was ineffective because he failed to:

---

**3.** *See United States v. Marshall,* 332 F.3d 254, 257 (4th Cir.2003).

**4.** Marshall contends that the government's response to his § 2255 petition was untimely and that the Court, therefore, should not consider it. (*See* Marshall's Motions for Judgment on Pleadings, filed as Docket Nos. 487, 509.) On August 31, 2004, the Court directed the government to file a response within 60 days. As of November 5, 2004, although the 60 days had expired, the government had not filed its response. Accordingly, the Court ordered the government to file its response no later than November 12, 2004. On November 12th, the government requested a 90–day ex-

tension. The Court granted the government's request on November 23rd.

The government filed its response brief on February 22, 2004. The government was under the impression that the 90–day extension began to run on November 23rd, when the Court granted its request, as opposed to November 12th, the prior due date. Under the government's theory, the 90–day extension expired on February 21 st. The Court, however, was closed on that date in celebration of Presidents' Day. Accordingly, the government filed its brief the following day. *See* Fed. R.Civ.P. 6(a) (stating that when the last day of the time period ordered by the Court falls on a legal holiday, the deadline is extended to the following business day). Because the Court's

(i) investigate Marshall's case or "advocate his cause;"

(ii) challenge the validity of the indictment;

(iii) challenge the admissibility of Marshall's statements to an undercover government agent;

(iv) challenge the admissibility of a tape recording;

(v) argue that there was insufficient evidence to sustain paraphernalia-related convictions; and

(vi) argue that there was insufficient evidence to sustain a CCE conviction. Marshall also argues that the Court erred when it read only part of the paraphernalia statute during its instructions to the jury. The Court will address, and reject, each of Marshall's claims in turn.

## II. Analysis

### A. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are evaluated under the *Strickland* two-prong test, which requires Marshall to show (i) that counsel's performance was deficient, and (ii) that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the first prong, Marshall must produce evidence that his counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id.* As for the second prong, Marshall must show that but for his attorney's deficient performance, the result of the proceedings would have been different. *See id.* The Court can address either the prejudice or effectiveness prong first, and if it finds that Marshall cannot satisfy one of the

prongs, the Court's inquiry ends and the petition is dismissed. *Id.* at 697, 104 S.Ct. 2052.

### 1. Alleged Failure to Investigate the Case and "Advocate His Cause"

█ Marshall generally alleges that Mr. Tuminelli failed to investigate his case and properly advocate on his behalf. He states that Mr. Tuminelli did not (i) investigate the facts, (ii) interview co-defendants or government witnesses, or (iii) call relevant expert or fact witnesses. He also contends that Mr. Tuminelli advised him not to testify. The Court rejects Marshall's claims.

Regarding Mr. Tuminelli's investigation and presentation of the case, Marshall has made only broad, vague allegations. He has not identified (i) what steps Mr. Tuminelli failed to take during his investigation, (ii) whom he should have interviewed, or (iii) what witnesses he should have called to testify. A petitioner cannot succeed on a § 2255 motion by simply making the bare allegation that his attorney should have done more.

In an affidavit attached to the government's response, Mr. Tuminelli explains that Marshall conceded "essentially all of the acts charged in the indictment," and disputed only whether those acts violated the law. (Docket No. 513, Ex. 3 ("Tuminelli Aff.").) Mr. Tuminelli states that he conducted an "exhaustive review of voluminous discovery documents and exhibits in preparation" for trial, but, because Marshall was not contesting the facts, Mr. Tuminelli saw no reason to further investigate Marshall's role in the offense. (*Id.*) Marshall never requested Mr. Tuminelli to conduct any additional investigation or to

---

order granting the 90–day extension did not make it clear whether the 90–day period ran from November 12th or November 23rd, the

Court will accept the government's response and will DENY Marshall's Motions for Judgment on Pleadings.

call a specific fact or expert witness to testify. (*Id.*) Marshall does not contest the statements in Mr. Tuminelli's affidavit.

There is no evidence that Mr. Tuminelli advised Marshall not to testify. In his affidavit, Mr. Tuminelli denies that he told Marshall not to take the stand. The trial transcript shows that Marshall made the decision himself after consulting with counsel, on the record, regarding his rights. Marshall stated on the record that he fully understood his rights and that he did not have any questions for the Court or Mr. Tuminelli regarding the issue. He then stated that he did not wish to testify. (*See* Trial Transcript, Docket No. 410, at 72–74.)

Mr. Tuminelli and the other defense attorneys in this case are highly qualified, experienced defense counsel. Each of their clients were charged with a serious conspiracy offense. Accordingly, the defendants had a common interest in defending against the charges, and their defense was a vigorous, collaborative effort. The trial lasted more than 25 days, with lengthy cross-examinations by Mr. Tuminelli and other defense counsel. The attorneys, including Mr. Tuminelli, prepared extensive pretrial motions arguing that the defendants' acts did not constitute a crime. There is, therefore, no evidence that Mr. Tuminelli's investigation of the facts, preparation for trial, or advocacy of his client fell below the range of competence demanded of criminal defense attorneys.

## 2. The Indictment

■ Count One charges that Marshall and his co-defendants conspired to aid and abet the distribution and the possession with intent to distribute cocaine base, a Schedule II controlled substance. Marshall contends that 21 U.S.C. § 812, which lists the schedules of controlled substances, does not list cocaine base under Schedule II. The indictment, therefore, is invalid, and his attorney was ineffective for failing to challenge it, he claims.

Schedule II of § 812 lists the following substances, among others: "coca leaves . . . cocaine, its salts, optical and geometric isomers . . . or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph." 21 U.S.C. § 812. Although "cocaine base" is not specifically listed in Schedule II, it is a compound or mixture which contains cocaine and, therefore, it falls under Schedule II. *See United States v. Cook*, 130 F.Supp.2d 43, 47 (D.D.C. 2000), aff'd, 22 Fed.Appx. 3 (D.C.Cir.2001); *United States v. Ford*, 994 F.Supp. 401, 402 (D.D.C.1998); *see also United States v. Talley*, 202 F.3d 262, 1999 WL 1054151, at * 1–2 (4th Cir.1999) (unpublished). Accordingly, Mr. Tuminelli was not ineffective for failing to challenge the indictment's validity.

Marshall also appears to make an argument under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Count One of the indictment specifically alleges drug quantity and the jury, via its verdict form, stated the quantity of cocaine base and other drugs involved in the conspiracy. Accordingly, there was no *Apprendi* violation to which Mr. Tuminelli should have objected. Moreover, the Fourth Circuit ruled that none of the defendants' sentences violated *Apprendi*. *Marshall*, 332 F.3d at 263 n. 5.

## 3. Admissibility of Statement to Undercover FBI Agent

■ FBI Special Agent Nikos Yiannos, posing as a drug paraphernalia broker, conducted an undercover investigation of Marshall and his co-defendants from December 1998 until early 2000. At trial, the government introduced statements that Marshall made to Special Agent Yiannos

on January 9, 1999. Marshall argues that Mr. Tuminelli should have objected to the introduction of those statements because they were obtained in violation of the Sixth Amendment. Specifically, he claims that because the state had arrested him in 1998 for "paraphernalia violations," the Sixth Amendment barred Special Agent Yiannos from speaking to him without his attorney present.

■ After a defendant has been charged with an offense, the Sixth Amendment prohibits the government from eliciting incriminating evidence from the defendant about that offense, in the absence of counsel. The right to counsel is "offense specific," meaning that it "does not automatically attach to other offenses with which [the defendant] has not been charged." *United States v. Alvarado,* 440 F.3d 191, 196 (4th Cir.2006) (citing *Texas v. Cobb,* 532 U.S. 162, 168, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001)), *cert. denied,* ——U.S. ——, 127 S.Ct. 81, 166 L.Ed.2d 29 (2006).

When the Sixth Amendment right attaches, however, "it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." *Cobb,* 532 U.S. at 173, 121 S.Ct. 1335. In *Blockburger,* the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* (quoting *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).

When Special Agent Yiannos spoke to Marshall on January 9, 1999, Marshall had not yet been charged with a federal crime. Marshall, however, argues that the right to counsel that attached when he was charged with state paraphernalia violations carried over to the federal investigation. This would be the case only if the state paraphernalia violations and the federal offenses for which he was being investigated constitute the "same offense" under the *Blockburger* test.

Marshall has offered nothing to show that Mr. Tuminelli's decision not to make a "same offense" argument rose to the level of ineffective assistance. Although Marshall cites to *Blockburger* as the applicable test, he fails to explain how it would have applied in this case. Other than stating that he was charged with "paraphernalia violations," he never identifies the state law that he was charged with violating, and he does not offer a comparison between the state paraphernalia offense and the federal paraphernalia offenses.

Moreover, even assuming that the state and federal paraphernalia violations are the same offense,[5] when Marshall spoke to Special Agent Yiannos in January 1999, he was under federal investigation for more than paraphernalia violations. The indictment in this case included charges for

---

**5.** Earlier this year, the Fourth Circuit held that a state offense and a federal offense can never be the "same offense" under the *Blockburger* test. *Alvarado,* 440 F.3d at 196 ("Since they arise from separate sovereigns, state and federal offenses are not the same for purposes of the Sixth Amendment right to counsel."). Marshall argues, however, that because the federal investigation included state law enforcement officers, Special Agent Yiannos's interrogation of Marshall was the result of "improper collusion between the federal and state authorities." (See Motion to Vacate, at 13.) There is, however, no evidence to show that the federal and state authorities collaborated to violate Marshall's Sixth Amendment rights. *See id.* at 198 ("[W]hile federal and state law enforcement authorities did engage in joint investigation, such collaborative efforts can hardly be dispositive of government misconduct.").

conspiracy to aid and abet the distribution of controlled substances and for engaging in a CCE, crimes which certainly require proof of elements not included in state paraphernalia statutes.

Even if Mr. Tuminelli's failure to raise a Sixth Amendment argument rendered his assistance deficient, Marshall has not demonstrated how he was prejudiced by the admission of his statements at trial. Specifically, he has not shown how the exclusion of the statements would have resulted in a different outcome, and the Court fails to see how their exclusion would have made any difference given the large amount of other, overwhelming evidence against him.

### 4. Admissibility of Tape Recording

■ Special Agent Yiannos had another conversation with Marshall on December 13, 1999, which he recorded on a digital recording device. Marshall contends that Mr. Tuminelli should have objected to the admission of the tape recording on the grounds that (i) the government did not show that Special Agent Yiannos knew how to operate the recording device, (ii) Special Agent Yiannos did not prepare a "302 report" regarding their conversation, (iii) the government did not establish the chain of custody of the tape recording, and (iv) the tape was not "sealed."

In evaluating a claim of ineffective assistance of counsel, the issue is not whether the defense attorney failed to assert every possible evidentiary objection, but rather whether his performance fell below the *Strickland* standard. No reasonable attorney would have challenged Special Agent Yiannos's ability to use the recording device. Special Agent Yiannos testified that he had used the same recording device to record conversations with the defendants from February 1999 until the end of his investigation and that during the course of

his investigation, he had made approximately 3,000 to 4,000 recordings. (*See* Trial Transcript, Docket No. 422, at 58, 93.) Although a recording device malfunctioned in January 1999 in the beginning of his investigation, he was able to recognize that there was a problem with the device and obtain a new recorder. (*See* Trial Transcript, Docket No. 419, at 125–26.) Special Agent Yiannos, therefore, was quite capable of detecting problems with recording devices. If he had been unable to use the digital recorder that recorded his conversation with Marshall on December 13, 1999, he would have detected the problem during one of the thousands of other recordings that he had made during the previous ten months.

Regarding the "302 report," Special Agent Yiannos testified that he had prepared such a report regarding his conversation with Marshall on December 13, 1999. (*See* Trial Transcript, Docket No. 422, at 79–80.) In fact, Mr. Tuminelli cross-examined Special Agent Yiannos regarding the contents of the report. (*Id.* at 80–85.) There was, therefore, no basis for an objection that Special Agent Yiannos did not prepare the report.

■ Marshall argues that Mr. Tuminelli should have objected to the government's failure to establish the tape's "chain of custody" or show that the tape had been "sealed." Marshall, however, has offered no reason why his attorney should have questioned the tape's authenticity. Other than stating that there was some "distortion in sound," he has not stated that someone tampered with the tape or that there was something else wrong with the tape that rendered it unreliable. Marshall does not claim that the voice on the tape is not his. Special Agent Yiannos was in the courtroom while the tape was played for the jury, and Mr. Tuminelli cross-examined him about its contents. There was,

therefore, no rational reason for Mr. Tuminelli to have put the government to the burden of demonstrating the tape's "chain of custody."

For these reasons, the Court finds that Mr. Tuminelli was not ineffective for failing to challenge the admissibility of the tape.

### 5. Insufficient Evidence to Sustain Paraphernalia–Related Convictions

Marshall contends that Mr. Tuminelli was ineffective for failing to argue that the mannitol that he sold did not constitute "paraphernalia" under the federal statute. Marshall ignores the fact that Mr. Tuminelli made such an argument at least three times.

First, prior to trial, Mr. Tuminelli moved to dismiss all counts against Marshall, arguing that transactions involving mannitol do not violate federal law. The Court denied the motion. Second, at the conclusion of the trial, Mr. Tuminelli orally moved for a judgment of acquittal, again arguing to the Court that mannitol is not "paraphernalia" as that term is defined in the federal statute. Again, the Court denied the motion.

Finally, on appeal, Mr. Tuminelli argued that the government had failed to show that the mannitol that Marshall and the other defendants imported and sold constituted "paraphernalia" and that this Court, therefore, should have instructed the jury that mannitol was not "paraphernalia" within the meaning of the statute. The Fourth Circuit rejected Mr. Tuminelli's argument and concluded that "[t]he evidence in this case clearly demonstrates that the mannitol sold by the Defendants" was "paraphernalia" and that this Court, therefore, "did not err in rejecting Defendants' request to instruct the jury that mannitol

did not constitute 'drug paraphernalia.' " *Marshall,* 332 F.3d at 259–61.

Accordingly, Mr. Tuminelli made the very argument that Marshall claims he did not make. Marshall, therefore, cannot sustain this claim of ineffective assistance.

### 6. Insufficient Evidence to Sustain CCE Conviction

Reading Marshall's papers in the light most favorable to him, he appears to be stating that there was insufficient evidence to convict him of engaging in a CCE and that Mr. Tuminelli violated *Strickland* by failing to make this argument either on a Rule 29 motion for judgment of acquittal or on appeal. Mr. Tuminelli states in his affidavit that he did challenge Marshall's CCE conviction at trial, although he does not elaborate on what arguments he made. (Tuminelli Aff.) Marshall, however, claims that Mr. Tuminelli failed to make any argument regarding the CCE count. The Court, however, need not resolve this dispute because, even had Mr. Tuminelli argued that there was insufficient evidence to convict Marshall of engaging in a CCE, his arguments would have been rejected and the outcome of the case would have been no different.

To convict a defendant of engaging in a CCE, the government must prove five elements:

> (1) [the] defendant committed a felony violation of the federal drug laws; (2) such violation was part of a continuing series of violations of the drug laws; (3) the series of violations were undertaken by defendant in concert with five or more persons; (4) defendant served as an organizer or supervisor, or in another management capacity with respect to those other persons; and (5) defendant derived substantial income or resources from the continuing series of violations.

*United States v. Roane,* 378 F.3d 382, 398 (4th Cir.2004) (citing *United States v. Ricks,* 882 F.2d 885, 890–91 (4th Cir.1989)), *cert. denied,* —— U.S. ——, 126 S.Ct. 330, 163 L.Ed.2d 43 (2005). Marshall claims that Mr. Tuminelli should have argued that the government had insufficient evidence regarding elements one, four, and five.

■ Regarding the first element (that Marshall "committed a felony violation of the federal drug laws"), Marshall claims that Mr. Tuminelli should have attacked his underlying conviction for conspiracy to aid and abet the possession and distribution of drugs. Apparently, Marshall believes that because he and his co-defendants were supplying different drug distributors with paraphernalia, the aiding and abetting conspiracy could not stand.

■ Marshall is mistaken on several points. First, the law does not require proof that co-conspirators agreed to assist an identifiable group of drug dealers. *See United States v. Perry,* 643 F.2d 38, 45 (2d Cir.1981) ("The conspiracy need not be … to aid only one identified heroin distribution network."); *United States v. Belkin,* 1993 WL 505652, at *1–2 (E.D.Pa. Dec. 8, 1993) (stating that the government is not required to allege or prove that the defendants agreed to aid and abet an identifiable group of drug dealers); *see also United States v. Horton,* 921 F.2d 540, 543 (4th Cir.1990) (citing *Perry* for the point that to obtain a conviction for aiding and abetting, the government need not prove the actual identity of the principal). Rather, it is sufficient for the government to show that Marshall intentionally agreed with his co-conspirators to sell dilutents and other paraphernalia that would be used in the making and distribution of controlled substances. *Perry,* 643 F.2d at 46. There is ample evidence that Marshall and his co-conspirators reached such an agreement. Moreover, the government did identify the drug dealers to whom Marshall and his co-conspirators sold their products.

Second, the first element requires the government to prove only that Marshall committed "a felony violation of the federal drug laws." Even without the conspiracy conviction, the government proved, and the jury found, that Marshall had committed eight other felony drug violations.[6] Thus, even if Mr. Tuminelli had successfully made Marshall's argument to the Court, the government would still have satisfied the first element and the outcome of the case would not have been any different.

As to the fourth and fifth elements (that Marshall was an organizer or supervisor and that he derived a substantial income from his criminal activity), neither a Rule 29 motion nor an appeal would have been successful. As the government states in its brief, and as the Court recalls from the trial, there was overwhelming evidence that Marshall was one of the leaders in the conspiracy and that he made a substantial income dealing drug paraphernalia. Furthermore, whether or not Mr. Tuminelli should have attacked the fourth and fifth elements at trial or on appeal is a matter of strategy for defense counsel that this Court will not second-guess. According to Mr. Tuminelli, Marshall had conceded the relevant facts, and the focus of his defense was on arguing that the sale and importation of mannitol did not violate the law.

---

6. In connection with the CCE count, the special verdict sheet provided the jury with a list of eleven drug violations allegedly committed by Marshall and asked the jury to check which violations, if any, the government had proven beyond a reasonable doubt. Including the conspiracy to aid and abet violation that Marshall challenges here, the jury found that Marshall had committed nine out of the eleven alleged violations.

Marshall does not dispute Mr. Tuminelli's characterization of the defense strategy.

The Court, therefore, rejects Marshall's claim regarding his CCE conviction.

### 7. Conclusion

For these reasons, Marshall has failed to satisfy the *Strickland* test for ineffective assistance of counsel, and the Court will DENY his claims.

### B. Paraphernalia Instruction

■ Finally, Marshall claims that the Court erred when it refused to include in its jury instructions a full reading of the paraphernalia statute. The Fourth Circuit already considered this issue on appeal and found that the Court did not abuse its discretion in refusing to read the entire statute. *Marshall,* 332 F.3d at 261–62. It is well-settled law that an issue that has been determined on direct appeal may not be relitigated in a § 2255 motion. *Proctor v. United States,* 729 F.Supp. 473, 474–75 (D.Md.1990), *aff'd, Epps v. United States,* 911 F.2d 721 (4th Cir.1990); *see also United States v. Crawley,* 309 F.2d 155, 156–57 (4th Cir.1962). Accordingly, the Court will DENY Marshall's claim.

## III. Conclusion

For the foregoing reasons, the Court will, by separate order, DENY Marshall's § 2255 motion and DIRECT the Clerk to CLOSE the case. Should Marshall choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of the judgment order. Upon reviewing the notice of appeal, this Court will either issue a certificate of appealability or state why a certificate should not issue in accordance with Federal Rule of Appellate Procedure 22(b)(1). If this Court should deny certification, Marshall may request a circuit judge of the United States Court of Appeals for the Fourth Circuit to issue the certificate.