**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4498**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

  v.

ANTONIO KEVIN MCKOY, a/k/a Bean,

  Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Dever III, District Judge. (7:16-cr-00116-D-1)

Argued: December 7, 2020                    Decided: February 9, 2021

Before NIEMEYER and AGEE, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Rudolph Alexander Ashton, III, DUNN PITTMAN SKINNER & CUSHMAN, PLLC, New Bern, North Carolina, for Appellant. David A. Bragdon, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Phillip A. Rubin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Antonio Kevin McKoy was convicted of numerous drug-related offenses and sentenced by the district court to life imprisonment, plus a consecutive five years' imprisonment. McKoy appeals, raising challenges to his conviction and sentence. Finding no reversible error, we affirm.

I.

The government's evidence, which was the product of an extensive investigation involving confidential informants, controlled buys, surveillance, and court-authorized wiretaps, showed the following. Antonio McKoy operated a drug-trafficking organization in Garland, North Carolina. He operated it out of his house and often stored his supply in an abandoned house located on the property. McKoy had a basketball court at his house and hosted games there on Sundays; drug transactions were conducted frequently during the weekly games.

Although many of those involved in the drug operation had known each other since high school, the trial evidence showed that McKoy was the leader. For example, one of the co-operating co-defendants testified that he sold drugs for McKoy at McKoy's direction and that "everything went through" McKoy. J.A. 684. In addition, the jury heard numerous intercepted phone calls during which McKoy instructed others to deliver drugs or collect money on his behalf.

The most damning testimony came from Andrekia Parker, who started out as McKoy's girlfriend and ended up becoming involved in the distribution network. Parker, who was an honors student in high school and left the National Guard to take care of her

2

grandmother, had no criminal record before meeting McKoy. Parker testified about her early observations of and subsequent involvement in McKoy's drug operation. Her testimony made it clear that McKoy was in charge, as he was always the one giving instructions to others. Parker agreed with the government that McKoy was "meticulous in his drug dealing," and explained that "he had everything on point. He had everything down to a T." J.A. 1001.

In November 2015, police executed a search warrant for McKoy's house. Although the police found nothing incriminating, the search caused a strain in Parker's relationship with McKoy. Parker was present (alone) at the house when the search took place, and McKoy believed the police had been listening through a phone that Parker had given him. By March 2016, McKoy had again warmed to Parker, who then became more involved in McKoy's drug-dealing activities.

In September 2016, McKoy instructed Parker to follow him in her car to Charlotte. Once in Charlotte, they stopped at a gas station, and McKoy instructed Parker to enter a specific address into the GPS unit in her car. He then got into her car and drove away, leaving her at the gas station with his truck. McKoy returned about 30 minutes later and gave Parker's car back to her. Parker drove away in her car, and McKoy followed behind in his truck. Not long after she left the gas station, a state trooper stopped Parker for failure to yield. After a drug dog alerted on the car, police found on the back seat Parker's backpack with nearly 5 kilos of cocaine inside.[1] Parker was arrested at the scene.

---

[1] Parker testified that there was no cocaine in her car before McKoy drove it.

3

McKoy, who had been driving behind Parker, continued driving after Parker was stopped by the police. The jury heard a recording of the phone conversation he was having as he drove past. In the conversation, McKoy speculated that he had been set up, given the way the trooper's car slipped in behind Parker. He told the other party that Parker would probably receive a lengthy prison sentence, but that he was "going to go ahead and do what I do, though." J.A. 1213. McKoy was arrested a few weeks later.

McKoy and 24 co-defendants (including Parker) were charged in a 49-count indictment with various drugs and weapons offenses. McKoy was charged with one count of conspiracy to distribute cocaine, crack cocaine, marijuana, meth, and heroin, *see* 21 U.S.C. §§ 841, 846; one count of carrying out a continuing criminal enterprise (CCE), *see* 21 U.S.C. § 848; one count of money-laundering, *see* 18 U.S.C. § 1956(a); fourteen substantive counts of possession with intent to distribute or completed drug distribution, most involving crack cocaine, *see* 21 U.S.C. § 841; and one count of possessing a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C. § 924(c).

McKoy and three co-defendants proceeded to trial. Parker, who pleaded guilty to the conspiracy charge, and several other co-defendants testified at trial. McKoy was convicted by a jury of all counts save one substantive distribution count. The district court sentenced McKoy to life imprisonment plus five years, as required by the § 924(c) conviction.

II.

McKoy first challenges the district court's decision to permit the government to pursue a line of questioning with Parker. "We review evidentiary rulings for an abuse of

4

discretion and will only overturn an evidentiary ruling that is arbitrary and irrational." *United States v. Cloud*, 680 F.3d 396, 401 (4th Cir. 2012) (internal quotation marks omitted).

Parker had gotten pregnant a few months before the ill-fated trip to Charlotte. When she told McKoy, he told her to get an abortion. He later drove Parker to a clinic that provides abortions and tried, unsuccessfully, to accompany her into the procedure room. Once inside, Parker decided against having an abortion. She got back into the car with McKoy without telling him that she had not gone through with it. During its direct examination of Parker, the government questioned Parker about the pregnancy and McKoy's request that she get an abortion. Counsel for McKoy objected on relevance grounds, which the district court overruled.

On appeal, McKoy argues that the district court erred by permitting the government to ask Parker about McKoy's abortion directive. He contends the line of questioning was not relevant to any issue at trial. He also contends that even if relevant, the questioning was unfairly prejudicial, because the subject of abortion is a politically charged issue that improperly appeals to the emotions of the jury. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

The government argues that the abortion evidence was relevant to the CCE charge. The CCE charge required proof that McKoy was a leader of the drug organization, *see* 21 U.S.C. § 848(c)(2)(A), and the government contends the abortion evidence showed McKoy

"controlling and directing [Parker], contextualizing how he did the same exact thing as to the drug organization." Brief of Appellee at 23. The government also contends the evidence was a part of the arc of Parker's story with McKoy and was necessary for the jury "to understand how Parker's behavior would be the fate of an honors student who served in the National Guard. The whole of their relationship is key to understanding what happened. . . ." *Id.*

Although the relevance of the abortion evidence seems dubious, we need not definitively resolve that issue. Even if we assume that the district court erred by admitting the abortion evidence, the error was harmless. *See Cloud*, 680 F.3d at 401 (explaining that an error in admitting evidence is harmless if the court can "say with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error") (internal quotation marks omitted).

While McKoy tries on appeal to minimize his involvement, the trial evidence showed that McKoy was the leader of a drug organization that moved large quantities of drugs. The jury heard the testimony of confidential informants who conducted controlled buys, as well as numerous recordings of McKoy conducting drug deals over the phone. Multiple co-defendants, including Parker, testified about their own involvement in the organization and about McKoy's leadership of it. Nothing in the testimony of these witnesses even suggested the possibility of any other leader. For example, a cooperating co-defendant described McKoy as his boss and explained he sold McKoy's drugs at McKoy's direction, returned the proceeds to McKoy, and was paid as determined by McKoy. Parker testified similarly, stating that McKoy "instruct[ed]" those involved in the

6

operation on "what to do with the drugs or who to meet with the drugs or where to carry the drugs or where to come back and meet him with the money." J.A. 986.

Because the record is replete with other evidence that directly established McKoy's control over the drug operation, we are confident that the verdict was not substantially swayed by the abortion evidence, which -- at best -- only indirectly and by analogy offered anything about McKoy's control over a criminal drug operation. Any error in the admission of the abortion evidence was therefore harmless. *See Cloud*, 680 F.3d at 401.

III.

The CCE charge required the government to prove that McKoy engaged in a "continuing series" of specified drug crimes undertaken "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management." 21 U.S.C. § 848(c)(2)(A). On appeal, McKoy contends the government's evidence was insufficient to support the CCE conviction. According to McKoy, the defendants were just a group of guys who grew up together and now hang out together while running their own independent drug businesses. While they may buy and sell from each other, they are all making their own independent profits. He therefore contends the evidence did not show the existence of a drug organization or that he was the organizer, supervisor, or manager of five or more persons involved in the violations. We disagree.

"When considering a challenge to the sufficiency of the evidence to support a conviction, this Court is obliged to sustain a guilty verdict if, viewing the evidence in the light most favorable to the Government, it is supported by substantial evidence." *United*

7

*States v. Moriello*, 980 F.3d 924, 930 (4th Cir. 2020) (internal quotation marks omitted). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

Contrary to McKoy's argument, the government was not required to prove the existence of a specific, formal drug enterprise. Instead, as noted above, the government was required to prove the existence of a continuing series of certain drug offenses undertaken by McKoy in concert with five others and that McKoy occupied some kind of management position over those five others. *See* 21 U.S.C. § 848(c)(2)(A). The government's evidence was more than sufficient to carry that burden.

While the trial evidence did establish that many of the defendants grew up together, it also very clearly showed a drug organization led by McKoy. As discussed above, the government presented evidence of the continuing series of drug offenses engaged in by McKoy through the testimony of law enforcement officers, confidential informants, co-defendants-turned-cooperating-witnesses, and recordings of McKoy's intercepted phone calls. That same evidence provided an ample basis for the jury to reasonably conclude that McKoy was in charge of the operation. As to the required involvement of at least five others, the testimony of the cooperating co-defendants identified more than five people who worked for McKoy.

Because the government's evidence was sufficient to establish each of the elements of the CCE charge and to permit a reasonable jury to find McKoy guilty of CCE beyond a reasonable doubt, we reject McKoy's challenge to the CCE conviction.[2]

IV.

We turn now to McKoy's challenges to his sentence. McKoy argues that the district court made various errors when calculating the Guidelines sentencing range. He also challenges the reasonableness of the life sentence imposed by the district court.

A.

McKoy raises numerous challenges to the district court's Guidelines calculation. He contends that the district court erred in determining the drug quantity attributable to him, *see* U.S.S.G. § 2D1.1(c), and in calculating his criminal history score, *see* U.S.S.G. § 4A1.1. He also contends the court erred by applying a leadership enhancement under U.S.S.G. § 3B1.1(a), a criminal-livelihood enhancement under U.S.S.G. § 2D1.1(b)(15)(E), a use-of-violence enhancement under U.S.S.G. § 2D1.1(b)(2), and an obstruction-of-justice enhancement under U.S.S.G. § 3C1.1.

"In determining whether a district court properly applied the advisory Guidelines, including application of any sentencing enhancements, we review the district court's legal conclusions *de novo* and its factual findings for clear error." *United States v. Layton*, 564

---

[2]    McKoy also contends that the district court committed plain error by not using a special verdict form when submitting the CCE charge to the jury. The district court committed no error, plain or otherwise. *See United States v. Marshall*, 332 F.3d 254, 263 n.5 (4th Cir. 2003) ("[T]he district court did not err in failing to require a special verdict on all elements of the CCE count.").

F.3d 330, 334 (4th Cir. 2009). Applying this standard of review, we see no merit to McKoy's Guidelines challenges and dispense with them summarily.

The district court committed no error in determining McKoy's criminal history category, which flowed from the district court's unchallenged application of the career-offender guideline. *See* U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI."). The district court's conservative calculation of the drug quantity attributable to McKoy is supported by the evidence presented at trial and contained in the presentence report and, therefore, is not clearly erroneous. The factual findings underlying the leadership, criminal-livelihood, and use-of-violence enhancements are likewise supported by the record, and the application of those enhancements was not error.

Finally, we see no error in the obstruction-of-justice enhancement that was premised on letters McKoy sent after his arrest promising love and monetary support for Parker and their child after he was released from prison. The district court reasonably viewed the letters as an effort to persuade Parker not to testify, such that the obstruction enhancement was proper. *See* U.S.S.G. § 3C1.1 cmt. n.4(A) (stating that a defendant's attempt at "unlawfully influencing a co-defendant, witness, or juror" supports an enhancement for obstruction of justice).

B.

McKoy also argues on appeal that the life sentence is unreasonable and that the district court should have granted his motion for a downward variance. We disagree.

10

When considering a challenge to the reasonableness of a sentence imposed by the district court, "we consider both substantive reasonableness, considering the totality of the circumstances, and procedural reasonableness, ensuring that the district court committed no significant procedural error, such as miscalculating the sentencing guidelines, failing to consider the § 3553(a) criminal and personal history factors, or selecting a sentence based on erroneous facts." *United States v. Zelaya*, 908 F.3d 920, 930 (4th Cir. 2018) (internal quotation marks and alteration omitted). We review for procedural errors first and consider the substantive reasonableness of the sentence only if we find no procedural errors. *See United States v. Bolton*, 858 F.3d 905, 911 (4th Cir. 2017).

As outlined above, the district court made no errors when calculating the Guidelines sentencing range. Those calculations left McKoy with a Category VI criminal history and a total offense level of 48, which was reduced to the Guidelines maximum of 43. Those numbers put McKoy's offense at the bottom of the Guidelines sentencing chart, where life imprisonment is the advisory sentence for all criminal history categories. The district court rejected McKoy's request for a variance and imposed the Guideline advisory sentence of life imprisonment, plus five years required for the § 924(c) conviction. When announcing the sentence, the district court focused on the "extraordinary scope of the criminal activity," J.A. 1626, McKoy's lack of remorse, the likelihood that McKoy would immediately start dealing again if released, and the need to provide deterrence to others in the community. The record supports the district court's views of the evidence and the nature of the offense, and the court's explanation is sufficiently detailed and individualized to McKoy's circumstances. *See Rita v. United States*, 551 U.S. 338, 356 (2007) (explaining that the

11

district court's explanation of the sentence must be sufficient "to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority"). Accordingly, McKoy's sentence was procedurally reasonable.

As to substantive reasonableness, this court presumes that a within-Guidelines sentence is reasonable. *See Zelaya*, 908 F.3d at 930. That presumption "can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *United States v. Gutierrez*, 963 F.3d 320, 344 (4th Cir.), *cert. denied*, 141 S. Ct. 419 (U.S. Oct. 5, 2020). In this case, the sentence imposed by the district court, though undeniably severe, is within the advisory range and is therefore presumptively reasonable. McKoy's challenge to the substantive reasonableness of the sentence offers little more than "disagreements with the district court's factual findings and legal conclusions," which is insufficient to "show that [his] sentence[ is] unreasonable when measured against the § 3553(a) factors." *Id.*

V.

Accordingly, for the reasons discussed above, we reject McKoy's challenges and hereby affirm his convictions and sentence.

*AFFIRMED*