**Maurice C. PROCTOR, Sr.**

v.

**UNITED STATES of America.**

Civ. No. Y–89–1600.
Crim. No. Y–85–0547.

United States District Court,
D. Maryland.

Jan. 22, 1990.

---

Maurice C. Proctor, Sr., pro se.

Peter M. Semel, Asst. U.S. Atty., Baltimore, Md., for the Government.

## MEMORANDUM

JOSEPH H. YOUNG, Senior District Judge.

Petitioner Maurice C. Proctor, Sr., an inmate at the Lewisburg federal prison, Lewisburg, Pennsylvania, has filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Three grounds for relief are raised in the Motion: (1) the government's failure to establish subject matter jurisdiction and to prove the offense as charged; (2) improper jury instructions; and (3) ineffective assistance of counsel. The Government's Response to Plaintiff's Motion and the Plaintiff's Traverse to the Government's Response are also before the Court.

On November 8, 1985 a federal grand jury indicted Proctor, along with co-defendants Leonard Epps and Timothy Wallace, for conspiring to violate civil rights in violation of 18 U.S.C. § 241 (1982); witness tampering and retaliation against a witness in violation of 18 U.S.C. §§ 1512(a)(3) and 1513 (1982); and use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) (1982).

The charges related to the September 2, 1985 assassination-style murder of William Player, a government informant. A few days prior to his death, Player had provided information leading to the indictment of Proctor on federal drug violations. According to the testimony of eyewitnesses adduced at trial, at approximately 11:00 pm on September 2, 1985, Player was sitting with friends on the front porch of his residence on Woodland Avenue in Baltimore, Maryland. Two men suddenly appeared from an adjoining passage way and one of them shot Player at close range, killing him instantly. The government contended that the murder was planned and ordered by Proctor, and carried out by Wallace and Epps, as retaliation for Player's cooperation with the government investigators.

Petitioner was tried jointly with co-defendant Wallace in May and June of 1986. Epps was severed from the trial because of his attorney's conflict of interest. On June 2, 1986 the jury returned a verdict of guilty as to defendant Wallace but was at an "impasse" in their deliberations regarding Proctor, resulting in a mistrial.

On September 15, 1986 a second trial was held with Proctor and Epps joined as co-defendants. The jury reached a verdict on September 26, 1986 convicting both defendants on all counts of the indictment. The defendants' motion for a new trial was denied after an evidentiary hearing held on November 13, 1986. This Court thereupon sentenced Petitioner to imprisonment for a combined term of life plus twenty-five (25) years. On appeal, the Fourth Circuit affirmed the Judgment of this Court. *United ed States v. Proctor*, 838 F.2d 1210 (4th Cir.1988).

Before relief may be granted under 28 U.S.C. § 2255, an inmate petitioner must show that:

> ... the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack....

28 U.S.C. § 2255 (1948). The Supreme Court has held that collateral attack under § 2255 is limited to claims of lack of jurisdiction or constitutional error or such errors of law or fact as constitute "a fundamental defect which inherently results in a complete miscarriage of justice". *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)).

It is well-settled law in this jurisdiction that § 2255 does not entitle a petitioner to relitigate, on collateral attack, issues which have been considered and decided on direct appeal or to tender issues which were re-

viewable only on direct appeal, *United States v. Crawley*, 309 F.2d 155, 157 (4th Cir.1962); *Banghart v. United States*, 208 F.2d 902, 903 (4th Cir.1953); *Neeley v. United States*, 405 F.Supp. 1186, 1189 (D.C.Va.) *affirmed* 549 F.2d 798 (4th Cir. 1975).

Petitioner first claims that the government failed to establish subject matter jurisdiction for purposes of proving a violation of 18 U.S.C. § 241 (1982). Specifically, Petitioner argues that,

> "[t]here exists *no constitutional provisions* [sic] which allows a federal court to prosecute a defendant under 18 U.S.C. 241 when the victim is not a citizen of the United States," [emphasis in original]

Petitioner's brief, at 1. Petitioner further argues that, based upon the evidence presented at trial, "no rational jury could have found William Player to be a citizen of the United States beyond a reasonable doubt." Petitioner's brief, at 5.

■ Although framed as a jurisdictional or constitutional challenge, Petitioner's first claim is essentially a disguised challenge to the sufficiency of the evidence at trial. Petitioner correctly defines the "citizen" element in § 241 to incorporate the Fourteenth Amendment definition of "all persons born or naturalized in the United States", However, the very authority upon which Petitioner relies defeats the assertion of any constitutional claim based upon construction of § 241. After a review of the relevant legislative history, the Second Circuit in *United States v. Gaggi*, 811 F.2d 47 (2nd Cir.1987) states that:

> the protections of § 241 do not extend to non-citizens, however salutary such an extension may be. The problem—*being statutory, and not constitutional*—has been and presently is still subject only to congressional remedy. [emphasis added]

811 F.2d, at 58.

Independent of any constitutional infirmity, subject matter jurisdiction was established by the government through the allegations contained in the indictment including, *inter alia*, an allegation that, "[a]t all times pertinent to this Indictment, William Player was a citizen of the United States...." Indictment, para. 1 (Doc. 1). The first witness called by the government presented direct testimony in support of the citizenship allegation. (Tr. vol. III, at 240–41). Thus, there is no question that the government adequately alleged one or more "offenses against the laws of the United States" thereby vesting this Court with subject matter jurisdiction. 18 U.S.C. § 3231. Petitioner's claims based upon constitutional or jurisdictional infirmity will be denied. Furthermore, to the extent Petitioner's first ground for relief consists of a challenge to the adequacy of the government's evidence supporting the citizenship element of § 241, such challenge has been previously considered on appeal and is thus beyond the proper scope of the instant motion. *Neeley v. United States, supra.*

As a second ground for relief, Petitioner contends that the Court erred in its instructions to the jury by failing to define the "citizenship" element of § 241. Petitioner argues that such a definition is essential due to the importance of citizenship as the "sole basis of federal jurisdiction". Petitioner's brief, at 6. Again, Petitioner attempts to relitigate questions of law and exaggerate the importance of a particular jury instruction by framing his argument in jurisdictional terms.

There is nothing inherently technical in the concept of "citizenship" which would make it foreign to the average juror. A variety of types of proof have sufficed to establish or raise the presumption of citizenship under the case law. *See e.g. United States v. Lebron–Gonzalez*, 816 F.2d 823, 827 (1st Cir.1987) (citizenship established by victims long residence in Puerto Rico); *United States v. Nathan*, 238 F.2d 401, 409 (7th Cir.1957) (government's proof of residence of victims raised presumption of their citizenship absent contrary evidence); *accord Hoffman v. United States*, 68 F.2d 101 (10th Cir.1933). No more precise instruction was requested by Petitioner during the trial. Thus, the Court finds no error of law "which inherently results in a complete miscarriage of justice." *United States v. Addonizio, supra*, at 185, 99 S.Ct., at 2240.

Also, under the circumstances presented in this case, the Court finds that Petition-

er's contention that a "miscarriage of justice" results from the omission of an instruction requiring the jury to find that Player, in fact, died from the wounds inflicted by his assailants on September 2, 1985 is without merit.

Finally, Petitioner contends that he was denied the effective assistance of counsel guaranteed under the Sixth Amendment. In particular, Petitioner argues that his attorneys: 1. failed to investigate or call certain vital witnesses; 2. refused to subpoena certain records that would have impeached the government's witnesses; 3. failed to move for an acquittal based upon the government's failure to establish the citizenship element; 4. failed to ensure that the bench conferences were recorded; and 5. stipulated to Vivian Player being William Player's sister, thereby depriving Petitioner of a challenge to the Court's jurisdiction. Petitioner's brief, at 11.

The Supreme Court, in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (O'Connor, J.), prescribed a two-pronged test for determining whether the assistance of defense counsel was so defective as to require reversal of a conviction and sentence. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. The inquiry under the first prong is "whether counsel's assistance was reasonable considering all the circumstances." 466 U.S., at 688, 104 S.Ct. at 2065. Secondly, the defendant must show that the deficient performance prejudiced the defense. The test here is whether defendant has shown that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S., at 687, 104 S.Ct. at 2064.

Judicial scrutiny of counsel's performance under this standard must be highly deferential. As Justice O'Connor stated in *Strickland:*

> It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.* at 689, 104 S.Ct. at 2065. The Court must therefore indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 690, 104 S.Ct. at 2066.

■ Thus, in determining Petitioner's ineffective assistance claim, the Court must give due consideration to all the circumstances presented by this case. Upon reviewing the trial record, as well as the transcript of the November 13, 1986 hearing on the new trial motion, the Court notes that the list of witnesses was extensive on both sides and that, although many witnesses were not called to testify, the presentation of evidence at trial spanned a period of approximately eight (8) days. As with most trials of this nature, the credibility of the witnesses was a key issue for the jury.

With regard to Petitioner's first two contentions, i.e., that counsel failed to investigate or present certain "vital" evidence, the Court finds that much of the evidence referred to by Petitioner would have been merely cumulative of (or in conflict with) defense testimony and documentation presented at trial, and would have contributed little to the jury's assessment of the credibility of the trial witnesses. Petitioner has not satisfied the Court that counsel's decision to avoid exhausting the jury and unduly extending an already lengthy proceeding with the presentation of cumulative or impeaching testimony and documentation was based upon anything other than professional trial strategy.

■ The Court further finds that the third and fifth grounds mentioned by Petitioner, i.e., failure to move for acquittal or otherwise challenge the Court's jurisdiction, fail to demonstrate ineffective assistance since, for the reasons stated *supra* such challenges clearly lack merit as a matter of law. Professional standards of criminal defense advocacy do not require counsel to present frivolous arguments.

Finally, Petitioner contends that counsel was unreasonable in failing to demand that certain bench conferences be recorded. In considering this final contention, the Court must view the transcript of the proceedings as a whole to determine whether such omis-

sions from the record disclose any specific prejudice to the defendant's appeal of the case under the law requiring the recording of "all proceedings in criminal cases had in open court". 28 U.S.C. § 753(b)(1) (1982); *see United States v. Taylor*, 607 F.2d 153 (5th Cir.1979) *rehearing denied* 614 F.2d 294; *see also United States v. Snead*, 527 F.2d 590 (4th Cir.1975).

The Court concludes that specific prejudice has not been shown. Indeed, the portions of the transcript attached to Petitioner's "Traverse to the Government's Response" indicate bench conferences conducted in the context of discussions relating to administrative matters such as the order of presentation of witnesses and when to take a lunch recess. The Court therefore finds that counsel's failure to demand the recording of such bench conferences was not unreasonable under the first prong of the *Strickland* analysis.

Petitioner therefore has failed to show that defense counsels' performance fell below an objective standard of reasonableness under the relevant analysis adopted in this Circuit. It is therefore unnecessary to determine whether any actual prejudice resulted from the conduct of Petitioner's attorneys. Petitioner's motion to vacate or set aside based upon ineffective assistance of counsel will be denied.