Rachelle L. ANDERSON, Petitioner

v.

UNITED STATES of America, Respondent.

Criminal No. L–00–033.
Civil No. L–04–3578.

United States District Court,
D. Maryland.

Jan. 4, 2007.

Martin J. Clarke, Office of the United States Attorney, Baltimore, MD, Lynne A. Battaglia, Maryland Court of Appeals, Annapolis, MD, for Respondent.

Rachelle Lanett Anderson, Alderson, WV, Pro se.

## MEMORANDUM

LEGG, Chief Judge.

Pending is *pro se* petitioner Rachelle L. Anderson's ("Anderson") motion to vacate her sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court will, by separate Order, DIRECT the government to FILE a supplemental brief regarding Anderson's claim concerning juror misconduct and DENY the remaining claims.[1]

### I. Background

On January 27, 2000, a federal grand jury indicted Anderson and thirteen co-defendants for conspiracy to distribute drug paraphernalia and conspiracy to aid and abet the distribution of illegal drugs. In the fall of 2000, Anderson and four of her co-defendants were tried over a 28–day period. The evidence at trial, which was overwhelming, showed that from 1993 to 2000, the defendants operated several stores in Baltimore, from which they sold chemical dilutents (including mannitol), gelatin capsules, glass vials, and other items that customers purchased and used to process and package controlled substances.[2]

The jury convicted Anderson and her co-defendants of conspiracy to (i) sell and offer for sale drug paraphernalia in violation of 21 U.S.C. § 863(a)(1), and (ii) aid and abet the distribution of and possession with intent to distribute heroin, cocaine hydrochloride, and cocaine base in violation of 18 U.S.C. § 2 and 21 U.S.C.

§ 841(a)(1). On August 17, 2001, the Court sentenced Anderson to 120 months imprisonment on the aiding and abetting count and 24 months (concurrent) on the drug paraphernalia count.

Anderson and several co-defendants appealed their convictions to the United States Court of Appeals for the Fourth Circuit. In an opinion dated June 13, 2003, the Fourth Circuit affirmed Anderson's sentence and conviction. *See United States v. Marshall,* 332 F.3d 254 (4th Cir.2003). The Supreme Court denied certiorari on November 17, 2003. Anderson, therefore, had one year from November 17, 2003 in which to file a § 2255 Motion to Vacate. *See United States v. Segers,* 271 F.3d 181, 182–86 (4th Cir.2001) (holding that one-year statute of limitations for filing a § 2255 motion begins to run when the Supreme Court denies the petition for writ of certiorari).

On November 8, 2004 (only nine days shy of the expiration of the one-year limitations period), Anderson filed the instant § 2255 Motion to Vacate. Her Motion claims that her attorney, Jonathan Gladstone, Esquire,[3] was ineffective because he:

(i) failed to investigate her case or adequately advocate on her behalf,

(ii) failed to argue that there was insufficient evidence to convict her of conspiring to aid and abet the distribution of drugs,

(iii) failed to argue that the indictment was invalid,

---

**1.** Because the facts and legal arguments regarding the claims that the Court is denying are adequately set forth in the existing record, an evidentiary hearing is not necessary. *See United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir.1988) (recognizing that "[a] hearing is not required ... on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

**2.** *See United States v. Marshall,* 332 F.3d 254, 257 (4th Cir.2003).

**3.** Gladstone represented Anderson at her trial and sentencing and on appeal.

(iv) failed to appeal an issue regarding juror misconduct, and

(v) failed to object to the jury verdict form, which created the possibility of a non-unanimous guilty verdict.

She also contends that (i) the Court erred when it refused to read the entire paraphernalia statute during its instructions to the jury, (ii) her sentence violates *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), (iii) her sentence violates *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), (iv) the Court erred in determining drug quantity for purposes of sentencing, and (v) because she did not play a managerial role in the conspiracy, her three-level increase under U.S.S.G. § 3B 1.1 was erroneous.

On April 4, 2005, the government filed its opposition brief. Several weeks later, on April 25, 2005 (more than five months beyond the one-year limitations period), Anderson filed a reply brief, in which she (i) offered additional support for her original claims, and (ii) asserted new claims. Then, on August 8, 2005, Anderson filed an amendment to her § 2255 Motion, in which she raised even more claims not contained in her original Motion.

## II. Analysis

Anderson's claims divide into the following three categories: (i) claims that are untimely because she did not assert them in her original Motion, (ii) claims that the Fourth Circuit decided on appeal, and (iii) remaining claims. The Court will address each category in turn.

4. Anderson also makes several other arguments so far-fetched that the Court need not address them.

5. Anderson also claims that Gladstone should have objected to the presentence report's

## A. Untimely Claims

In her reply brief and amended Motion, Anderson asserted the following claims not found in her original Motion [4]:

(i) her attorney was ineffective because

(a) he failed to object to alleged prosecutorial misconduct. Specifically, Anderson states that the prosecutor introduced evidence concerning drugs, drug dealers, drug gangs, drug manufacturing, and bullet proof vests. She argues that this evidence was prejudicial because she was not involved in drug manufacturing or distribution. She also claims that the prosecutor misbehaved when he introduced into evidence grand jury testimony that she gave in 1997 regarding a December 1994 murder. She alleges that the prosecutor somehow "altered" her grand jury testimony when he read it to the jury,

(b) when she rejected a proposed plea agreement that would have required her to testify against her brother and co-defendant, John Anderson, Gladstone did not come back to her with another plea offer,

(c) he failed to object to the probation officer's alleged lies in the presentence report ("PSR") regarding Anderson's work record and management of the Charles Street stores,[5] and

(d) he failed to object when (i) the Court instructed the jury regard-

mention of drug amounts, contending that she never sold drugs. On direct appeal, however, the Fourth Circuit affirmed this Court's calculation of drug quantities.

ing the amounts of heroin, cocaine, and cocaine base alleged in the indictment and (ii) the Court asked the jury to determine the type and quantity of drugs involved in the conspiracy, and

(ii) the Court erred when it allowed the government to introduce videos, photos, and testimony from surveillance logs, without calling to the stand witnesses who had personal knowledge regarding those logs.

■ Anderson filed her reply brief and amended Motion more than five months after the expiration of the one-year limitations period. As a result, the above claims are untimely unless they relate back to her original Motion. Under Rule 15(c) of the Federal Rules of Civil Procedure, relation back is permitted when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R.Civ.P. 15(c)(2).

■ According to the Fourth Circuit, "[t]he fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c)." *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir.2000). As the Fourth Circuit explained, "[i]f we were to craft such a rule, it would mean that amendments to a § 2255 motion would almost invariably be allowed even after the statute of limitations had expired, because most § 2255 claims arise from a criminal defendant's underlying conviction and sentence." *Id.*

■ In evaluating a "relation back" theory in the context of a § 2255 motion, courts look to see whether the petitioner's new claims and original claims "arise from separate occurrences of 'both time and type.'" *Id.* (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir.1999)). For the new claims to relate back to the original claims, they must arise from the "same set of facts," and the original motion must have put the government on notice of the theories asserted in the untimely filing. *Craycraft*, 167 F.3d at 457. Anderson's original Motion does not address the alleged prosecutorial misconduct, the plea bargaining process, the surveillance logs, the facts regarding Anderson's work history as reported by the probation officer in the PSR, or the Court's instructions (and questions) to the jury regarding the drug amounts alleged in the indictment. The original Motion, therefore, did not put the government on notice that Anderson was raising these claims, and the new claims do not arise from the same set of facts as the original claims. Moreover, there is no reason why Anderson could not have raised these claims in her original Motion.

Accordingly, the new claims that Anderson asserted in her reply brief and amended Motion are time-barred.[6]

---

6. Even if these claims were timely, the Court would deny them.

*First*, because the case involved a conspiracy to aid and abet the distribution of drugs, evidence regarding how the drug trade operates was admissible.

*Second*, Anderson rejected the plea offer made by the government. She now complains that her attorney did not present her with another plea offer, but there is no evidence that the government was willing to propose another deal after she had turned down the first offer.

*Third*, Anderson offers no specific information regarding what lie the probation officer supposedly told about her work record. Also, there was abundant evidence that Anderson played a managerial role in the conspiracy. Thus, even absent the statement in the PSR regarding the Charles Street stores, the Court still would have found that she played a managerial role and would have increased her

## B. Claims Decided on Direct Appeal

■ It is well-settled law that an issue that has been determined on direct appeal may not be relitigated in a § 2255 motion. *Proctor v. United States,* 729 F.Supp. 473, 474–75 (D.Md.1990), *aff'd, Epps v. United States,* 911 F.2d 721 (4th Cir.1990); *see also United States v. Crawley,* 309 F.2d 155, 156–57 (4th Cir.1962). The Fourth Circuit has already decided several issues that Anderson raises in her § 2255 motion.

First, Anderson claims that the Court erred when it failed to include in its jury instructions a full reading of the paraphernalia statute. The Fourth Circuit found that the Court did not abuse its discretion in failing to read the entire statute. *Marshall,* 332 F.3d at 261–62.

Second, Anderson contends that her sentence violates *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In its opinion affirming Anderson's conviction and sentence, the Fourth Circuit specifically stated that "none of Defendants' sentences violated the Supreme Court's holding in *Apprendi.*" *Marshall,* 332 F.3d at 263 n. 5.

Third, Anderson argues that she did not play a managerial role in the conspiracy and that the three levels that the Court added to her offense level under U.S.S.G. § 3B1.1 were unwarranted. The appeals court, however, affirmed this Court's "factual findings as to the aggravated roles of . . . Defendants." *Id.*

Finally, Anderson challenges the Court's calculation of drug quantity for sentencing purposes. Anderson simply echoes the arguments that her attorney made on appeal and that the Fourth Circuit rejected.[7] *See* Brief of Appellants at *37–47 (challenging

---

offense level by three levels. Moreover, Gladstone challenged the three-level increase on appeal, but the Fourth Circuit affirmed. *See Marshall,* 332 F.3d at 263 n. 5.

*Fourth,* the Court did not err by including in the jury instructions the amounts of controlled substances alleged in the indictment or by asking the jury to determine the amounts and types of drugs involved. Any objection by Gladstone, therefore, would have been futile.

*Finally,* the Fourth Circuit ruled on appeal that this Court properly admitted the surveillance logs into evidence. *See* Brief of Appellants, at *33–35, *United States v. Marshall,* 2003 WL 23872896 (4th Cir.2003) (Nos.01–4488, 01–4490, 01–4688, 01–4689, 01–4694) (hereinafter "Brief of Appellants") (arguing that it "was error to permit the admission of videos, photos, and testimony from surveillance logs absent a showing of personal knowledge by the witness or otherwise demonstrating the accuracy of the evidence"); *Marshall,* 332 F.3d at 263 n. 5 (rejecting appellants' argument).

7. In addition, Anderson asks the Court to reduce her sentence under 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10, both of which allow the Court to reduce a defendant's sentence when the defendant's guideline range is lowered post-sentencing as a result of an amendment to the Guidelines manual. Anderson claims that Amendment 484 to U.S.S.G. § 2D1.1 lowered her guideline range. That amendment states that a "[m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. § 2D1.1 (appl. note 1); *see also United States v. Turner,* 59 F.3d 481, 489–90 (4th Cir.1995). That amendment went into effect in 1993. It, therefore, was already in effect when Anderson was sentenced in 2001, and §§ 3582(c)(2) and 1B1.10 are inapplicable. Moreover, at the heart of Anderson's claim is the argument that because she sold only packaging materials and not drugs, the Court erred by applying the drug guideline and by using the amount of paraphernalia sold as a basis for determining the amount of drugs for purposes of the guideline. The Fourth Circuit already considered and rejected this argument. *See Marshall,* 332 F.3d at 263 n. 5 (affirming this Court's "calculation as to attributable drug quantities"); *see also* Brief of Appellants at *37–47 (challenging the Court's use of an extrapolation process to determine the amount of drugs for purposes of the guidelines).

Court's calculation of the "amount of drugs involved for sentencing purposes through an extrapolation process in a case which involved no actual drugs"); *Marshall*, 332 F.3d at 263 n. 5 ("[S]ufficient evidence supported ... the district court's calculation as to attributable drug quantities.").

The Fourth Circuit has already considered, and rejected, these claims. Accordingly, Anderson cannot raise them in this § 2255 proceeding, and the Court will DENY them for that reason.

## C. Remaining Claims

Putting aside Anderson's untimely claims and the claims that the Fourth Circuit decided on direct appeal, Anderson is left with a handful of ineffective assistance of counsel claims and the *Blakely* claim stated in her original Motion.[8]

### 1. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are evaluated under the *Strickland* two-prong test, which requires Anderson to show (i) that counsel's performance was deficient, and (ii) that counsel's deficient performance prejudiced her. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the first prong, Anderson must produce evidence that her counsel's performance was not "within the range of competence demanded of attorneys in criminal cases." *Id.* As for the second prong, Anderson must show that but for her attorney's deficient performance, the result of the proceedings would have been different. *See id.* The Court can address either the prejudice or effectiveness prong first, and if it finds that Anderson cannot satisfy one of the prongs, the Court's inquiry ends and the petition is dismissed. *Id.* at 697, 104 S.Ct. 2052.

### a. Alleged Failure to Investigate the Case and Advocate on her Behalf

■ Anderson generally alleges that Gladstone failed to investigate her case and properly advocate on her behalf. She states that Gladstone did not (i) investigate the facts, (ii) interview co-defendants or government witnesses, (iii) argue on appeal about "charges [she] was indicted for," or (iv) explain anything to her during the trial. The Court rejects Anderson's claims.

Anderson makes broad, vague allegations. She has not identified (i) which co-defendants or government witnesses Gladstone should have interviewed, (ii) what arguments he should have made on appeal, or (iii) what Gladstone failed to explain to her during trial. A petitioner cannot succeed on a § 2255 motion by simply making the bare allegation that her attorney should have done more.

Anderson does make one specific argument, stating that if Gladstone had investigated, he would have discovered that from December 1994 until April 1998 she operated her own store on Park Heights Avenue, which she opened and closed every day of the week, that her children were often present in the store, and that her store was located across town from the store that John Anderson, her brother and co-defendant, owned. She further claims that Gladstone should have talked to other store owners in the Park Heights Avenue neighborhood, and that those owners would have confirmed that she ran her own business on Park Heights Avenue.

Reading Anderson's motion in the light most favorable to her, she appears to be arguing that she was so busy operating

---

**8.** Anderson's reply brief and amended Motion include arguments in support of her non- defaulted claims. To that extent, the Court has considered those papers.

her store on Park Heights Avenue that she would not have had time to help her brother manage his paraphernalia store, which was located across town. Gladstone, however, did not need to "investigate" these facts, as Anderson herself was quite capable of explaining them to him. To the extent that Anderson believes that Gladstone should have called some of the nearby store owners to testify that she worked at her store day in and day out, Anderson does not name the store owners, nor does she state that she told Gladstone about them. In an affidavit attached to the government's response, Gladstone states that he "repeatedly asked Ms. Anderson if she had any witnesses" and that she suggested only one person, whom he did call to testify. (Docket No. 518, Ex. 4 ("Gladstone Aff.").) In fact, Gladstone was the only defense attorney to call a fact witness at trial. (*Id.*)

Gladstone explains in his affidavit that he "diligently prepared" for trial and "thoroughly investigated all defenses and weaknesses in the government's case." (*Id.*) Although he did not interview Anderson's co-defendants, he states that he "was in constant contact with their attorney[s] and knew that [Anderson's co-defendants] were not going to testify and were not in a position to help Ms. Anderson." (*Id.*) In addition, he states that he and the attorneys representing the other defendants in the case "thoroughly cross-examined" the government's wit-

nesses and elicited impeaching testimony from them. (*Id.*)

Gladstone and the other defense attorneys in this case are qualified and experienced. Each of their clients was charged with a serious conspiracy offense. Accordingly, the defendants had a common interest in defending against the charges, and their defense was a vigorous, collaborative effort. The trial lasted more than 25 days, with lengthy cross-examinations by Gladstone and other defense counsel. There is, therefore, no evidence that Gladstone's investigation of the facts, preparation for trial, or advocacy for his client fell below the range of competence demanded of criminal defense attorneys.

### b. Conspiracy to Aid and Abet the Distribution of Drugs

■ Anderson contends that the evidence at trial could not sustain a conviction for conspiring to aid and abet the possession and distribution of drugs and that Gladstone was ineffective because he failed to make this argument at trial.[9] Anderson offers several reasons why she believes the evidence was insufficient.

First, reading Anderson's motion liberally, she claims that the government was required to prove that the defendants conspired to aid and abet one identifiable drug distribution ring. The proof against her fell short because the government never identified a cohesive set of individuals to whom she and her co-defendants sold par-

---

9. To the extent that Anderson is raising a substantive claim challenging the sufficiency of the evidence against her, her substantive claim is procedurally defaulted because she failed to raise it on direct appeal. *See Bousley v. United States,* 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed v. Farley,* 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (in-

ternal quotations omitted))). Anderson can overcome the procedural default if she can show that her attorney was ineffective for failing to raise her claim on direct appeal. *See Wright v. Angelone,* 151 F.3d 151, 160 n. 5 (4th Cir.1998). As discussed above, Gladstone was not ineffective for failing to challenge the sufficiency of the evidence to sustain the conspiracy conviction. Accordingly, Anderson's substantive claim is barred.

aphernalia from their various stores, she claims. Anderson's argument misstates the law.

The law does not require proof that co-conspirators agreed to assist an identifiable, interrelated group of drug dealers. *See United States v. Perry,* 643 F.2d 38, 45 (2d Cir.1981) ("The conspiracy need not be . . . to aid only one identified heroin distribution network."); *United States v. Belkin,* 1993 WL 505652, at *1-2 (E.D.Pa. Dec. 8, 1993) (stating that the government is not required to allege or prove that the defendants agreed to aid and abet an identifiable group of drug dealers); *see also United States v. Horton,* 921 F.2d 540, 543 (4th Cir.1990) (citing *Perry* for the point that to obtain a conviction for aiding and abetting, the government need not prove the actual identity of the principal).

It is sufficient for the government to show that Anderson intentionally agreed with her co-conspirators to sell dilutents and other paraphernalia to those who would use them in manufacturing, packaging, and distributing drugs.[10] *Perry,* 643 F.2d at 46. There is ample evidence that Anderson and her co-conspirators reached such an agreement. Moreover, the government did identify some of the drug dealers to whom Anderson and her co-conspirators sold their products. Accordingly, there was no basis for the argument that Anderson contends Gladstone should have made.

Second, Anderson argues that there was no evidence that she and her co-defendants understood or agreed that products they sold would be used by drug dealers. As the government states in its brief, and as the Court recalls from the trial, there was overwhelming evidence that Anderson knowingly conspired with her co-defendants to make money by selling drug paraphernalia to drug dealers. At sentencing, the Court found that Anderson played a managerial role in the conspiracy. The Fourth Circuit affirmed on this point. Accordingly, had Gladstone argued about the sufficiency of the evidence on the conspiracy count, his argument would have been futile.

### c. The Indictment

■ Count One charges that Anderson and her co-defendants conspired to aid and abet the distribution of and the possession with intent to distribute cocaine base, a Schedule II controlled substance. Anderson contends that 21 U.S.C. § 812, which lists the schedules of controlled substances, does not list cocaine base under Schedule II. The indictment, therefore, is invalid, and her attorney was ineffective for failing to challenge it, she claims.

Gladstone did raise this issue on appeal. *See* Brief of Appellants at *46-47. Although the Fourth Circuit did not explicitly address the issue in its opinion, it affirmed Anderson's conviction and sentence, thus rejecting her claim. Moreover, contrary to Anderson's argument, Schedule II does list cocaine base. Schedule II of § 812 lists the following substances, among others: "coca leaves . . . cocaine, its salts, optical and geometric isomers . . . or any compound, mixture, or preparation

---

**10.** Anderson cites *Perry,* in which the Second Circuit stated that the government cannot prove a conspiracy to aid and abet drug distribution merely by offering evidence "that different members of a group were each aiding different heroin distributors." *Perry,* 643 F.2d at 46. Anderson, however, overlooks the rest of the *Perry* opinion, in which the court explained that a conspiracy may be proven if the defendants actually agreed "to pursue the objective of aiding several [drug] distribution networks." *Id.* In this case, the government offered sufficient evidence that Anderson and her co-defendants agreed to sell paraphernalia to various drug dealers. Accordingly, Anderson's argument fails.

which contains any quantity of any of the substances referred to in this paragraph." 21 U.S.C. § 812. Although "cocaine base" is not specifically listed by name, it is a compound or mixture which contains cocaine and, therefore, it falls under Schedule II. *See United States v. Cook,* 130 F.Supp.2d 43, 47 (D.D.C.2000), aff'd, 22 Fed.Appx. 3 (D.C.Cir.2001); *United States v. Ford,* 994 F.Supp. 401, 402 (D.D.C. 1998); *see also United States v. Talley,* 202 F.3d 262, 1999 WL 1054151, at *1–2 (4th Cir.1999) (unpublished).

Anderson also claims that Gladstone was ineffective because he did not argue that Count One was barred by the five-year statute of limitations established in 18 U.S.C. § 3282(a). The statute provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found ... within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). Anderson argues that the indictment charges that the conspiracy began in 1994, but she was not indicted until 2000, more than five years later.

This contention fails. Count One charges that the conspiracy was still ongoing when the grand jury returned the indictment in January 2000. There was ample evidence at trial of Anderson's involvement in the conspiracy during the five years prior to the January 2000 indictment. Accordingly, Count One did not violate the statute of limitations. *See United States v. Smith,* 451 F.3d 209, 217 (4th Cir.2006) (concluding that because the defendant had participated in the conspiracy within five years of the indictment, there was no statute of limitations

violation), *cert. denied,* —— U.S. ——, 127 S.Ct. 197, 166 L.Ed.2d 161 (2006).

### d. Jury Verdict Form

■ Anderson argues that Gladstone was ineffective for failing to object to the verdict form, which she claims was phrased in such a way that the jury's verdict on Count One might not have been unanimous. Count One charged Anderson with conspiracy to aid and abet "the distribution and the possession with intent to distribute" controlled substances. (*See* Indictment.) The verdict form asked the jury: "How do you find Rachelle Anderson as to the charge of conspiracy to aid and abet the distribution *or* possession with intent to distribute a controlled substance in Count 1 of the indictment? Not Guilty ——— Guilty ———" (Docket No. 305, at 8 (emphasis added).) The jury checked "Guilty." Anderson argues that some of the jurors might have found her guilty of conspiring to aid and abet the distribution of a controlled substance while the others might have found that she conspired to aid and abet the possession with intent to distribute a controlled substance.

The verdict form was not improperly worded, and Anderson does not cite to any authority to the contrary.[11] It is illegal to conspire to aid and abet others to violate a criminal statute. *See* 18 U.S.C. § 2(a); 21 U.S.C. § 846; *United States v. Perry,* 643 F.2d 38, 44–45 (2d Cir.1981). Thus, Anderson committed a crime if she conspired to aid and abet drug dealers to violate 21 U.S.C. § 841(a). The acts of distributing a controlled substance and possessing with intent to distribute a controlled substance each violate 21 U.S.C.

---

11. Anderson cites *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). That case is inapposite because it does not address verdict forms or unanimity.

Rather, it concerns whether the court must submit the issue of materiality of a defendant's allegedly false statements to the jury.

§ 841(a).[12] Even if, as Anderson suggests, some of the jurors found that she conspired to aid and abet the distribution of drugs (a violation of § 841(a)) and the other jurors found that she conspired to aid and abet the possession with intent to distribute drugs (also a violation of § 841(a)), all twelve jurors would have found that she committed the crime of conspiring to aid and abet drug traffickers to violate § 841(a). There was, therefore, no error.

Even if Anderson were correct that the verdict form was improperly worded, there would be no *Strickland* violation. First, the issue that Anderson raises is so technical that no attorney would be deemed inadequate for failing to spot it. Second, throughout its jury instructions, the Court repeatedly emphasized that the jury's verdict must be unanimous. (*See* Trial Transcript, Docket No. 310, at 74 ("To report a verdict, it must be unanimous. So in order to report a verdict on any count on any defendant, all of you must agree, all 12, and each of you must agree.... Your verdict, whether it is guilty or not guilty, must be unanimous."); *id.* at 76 ("One of the boxes can be checked if the jury reaches a unanimous verdict."); *id.* at 77 ("And again remember, in order to fill out any of this subset of the verdict form, you would need to agree unanimously."); *id.* at 78 ("Again, in order to answer any of the questions on this verdict sheet, your verdict must be unanimous.")).

Finally, Anderson has failed to explain how the verdict form prejudiced her, other than to speculate that the verdict may not have been unanimous.[13] Notably, she does

not argue that the end result would have been any different if Gladstone had lodged an objection and the Court had revised the verdict form so that it asked the following two separate questions: (i) "How do you find Rachelle Anderson as to the charge of conspiracy to aid and abet the distribution of a controlled substance in Count 1 of the indictment?", and (ii) "How do you find Rachelle Anderson as to the charge of conspiracy to aid and abet the possession with intent to distribute a controlled substance in Count 1 of the indictment?" There was overwhelming evidence that Anderson and her co-defendants were part of a long-standing conspiracy to provide drug dealers with the paraphernalia necessary to process and package drugs. There is, therefore, no reason to believe that the unanimous response of all twelve jurors to both of those questions would have been anything other than "Guilty." Accordingly, Anderson cannot show that she suffered any prejudice, and the Court will deny her claim.

### e. Juror Misconduct

During the trial, Alternate Juror Number 1 brought to the Court's attention that Juror Number 1 had used the phrase "fry them" in front of other jurors. After questioning Juror Number 1, the Court struck her from the jury. On appeal, no party argued that the Court should have done anything else regarding the juror issue.

In her § 2255 motion, Anderson argues that Gladstone was ineffective for failing to raise the juror issue on appeal. Specifically, she contends that Gladstone should

---

**12.** 21 U.S.C. § 841(a)(1) states: "[I]t shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

**13.** She generally states that "[f]ailure by counsel to raise this issue in the district court resulted in the kind of prejudice needed to prove ineffective assistance of counsel," without defining the prejudice that she has allegedly suffered. (*See* § 2255 Motion, at 20.)

have argued that the Court should have stricken Juror Number 12, who allegedly said "agreed" in response to Juror Number 1's "fry them" remark, and that the Court should have questioned all of the jurors regarding whether they had heard the "fry them" comment and whether it had affected their ability to render an unbiased verdict.[14]

The government, without citing to the transcript and without discussing any of the underlying facts related to this claim, responded only that Anderson has not offered any new evidence or any new legal perspective that would call into question the manner in which the Court handled the juror issue. The government, however, fails to address Anderson's contention that Gladstone was ineffective for failing to appeal the issue. Accordingly, this claim requires further development before the Court can rule on it.

Within three weeks from the date of this Memorandum, the government shall file a supplemental brief that:

(i) describes the facts and the Court's rulings related to the juror issue, with citations to the trial transcript, and

(ii) analyzes whether Gladstone was ineffective for having failed to raise the issue on appeal. The government shall attach to its brief an affidavit from Gladstone explaining why he did not appeal the juror issue.

### f. Conclusion

For the above reasons, the Court will DENY Anderson's ineffective assistance claims, with the exception of the claim regarding juror misconduct.

### 2. Application of *Blakely* and *Booker*

Citing *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Anderson argues that the Court violated her constitutional rights by increasing her offense level under the United States Sentencing Guidelines based on facts not considered by the jury or charged in the indictment. Although Anderson does not cite to *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which extended *Blakely* to the federal sentencing guidelines, the Court will assume that she also relies on *Booker*.

The Fourth Circuit has held that the rule announced in *Booker* "is not available for post-conviction relief for federal prisoners ... whose convictions became final before *Booker* (or *Blakely*) was decided." *United States v. Morris*, 429 F.3d 65, 72 (4th Cir.2005), *cert. denied,* —— U.S. ——, 127 S.Ct. 121, 166 L.Ed.2d 91 (2006). Anderson's conviction became final on November 17, 2003, prior to the Supreme Court's decisions in *Blakely* and *Booker*. Accordingly, the *Booker* rule does not ap-

---

**14.** Anderson also asks the Court to grant her a new trial, claiming that because the Court did not strike Juror Number 12 or question the other members of the jury, there was no way to assess the possible juror bias, and it is likely that she was convicted by a biased jury. Because Anderson did not raise this substantive claim on appeal, it is procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) ("Habeas review is an extraordinary remedy and 'will not be allowed to do

service for an appeal.' " (quoting *Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (internal quotations omitted))). Anderson can overcome the procedural default if she can show that her attorney was ineffective for failing to raise her claim on direct appeal. *See Wright v. Angelone*, 151 F.3d 151, 160 n. 5 (4th Cir.1998). As the Court discusses above, more briefing from the government is required before the Court can decide the ineffectiveness issue.

ply retroactively to Anderson's sentence, and the Court will DENY her claim.

## III. Conclusion

For the foregoing reasons, the Court will, by separate order, DIRECT the government to FILE a supplemental brief regarding Anderson's claim concerning juror misconduct and DENY the remaining claims.

## ORDER

Pending is *pro se* petitioner Rachelle L. Anderson's ("Anderson") motion to vacate her sentence pursuant to 28 U.S.C. § 2255. For the reasons stated in the Memorandum of even date, the Court ORDERS as follows:

(i) within three weeks from the date of this Order, the government shall FILE a supplemental brief regarding Anderson's claim concerning juror misconduct. The supplemental brief shall:

    (a) describe the facts and the Court's rulings related to this claim, with citations to the trial transcript, and

    (b) analyze whether Mr. Gladstone was ineffective for having failed to raise this issue on appeal. The government shall attach to its brief an affidavit from Mr. Gladstone explaining why he did not appeal the juror issue; and

(ii) the Court DENIES Anderson's remaining claims.